*539 Opinion of the court, by
Judge Hitoiioock:
Although this case seems to be involved in some obscurity, and many points have been raised and argued by counsel, yet, upon a careful examination, there does not appear to be any serious difficulty. The great object is-to ascertain the intention of the parties in their several contracts and dealings, and when this is once ascertained, the case is easily disposed of.
Th.e case appears to be this: On April 11, 1821, Felix Rennick was indebted to the Bank of Chillicothe, in the sum of $22,465.44. Of this amount, $12,465.44 was secured by notes indoi’sed'by Fullerton, Waddle, and Carlisle, and $10,000 was without any security. At the same time F. Rennick was possessed of a farm, in Ross county, called the high bank farm, containing 1,200 acres of land. This farm, on April 14, 1821, he mortgaged to the bank to secure the payment of the aforesaid debt of $10,000, the said debt being made payable in installments, the last of which would fall due on April 18, 1826.
On April 11, 1821, Felix Rennick, for the expressed consideration of $23,000, conveyed the high bank farm to his brothers, George and William Rennick, the complainants, by deed absolute upon its face. But, at the same time, a contract in writing was given by George and William to Felix, binding themselves to pay him $13,000 on or before April 11, 1826, and át the same time to veconvey to him 300 acres of land, of an average quality with the whole farm, and also a like quantity on or before April 11, 1830. There is a stipulation in the contract, that George and William may pay the $13,000, by clearing off ^incumbrances upon the land. It is observable that the last installment of the debt to the bank, secured by mortgage, fell due on April 11, 1826; that the whole debt, with interest, would, at that time, amount to about $13,000, and that there was no other incumbrance on the land.
Six days after this transaction, the bank recovered a judgment on one of their notes against Felix, indorsed by Carlisle, Fullerton, and Waddle, for $2,891. And in March following, recovered two other judgments against the same, one for $1,035, th.e other for $8,907, which three judgments included all the debts due from Felix to the bank, exclusive of the one secured by mortgage, and would have operated as liens upon the high bank farm, but for the conveyance to the complainants before referred to.
On March 24, 1823, the high bank farm was sold by the Ren *540 nicks to Rees McNeil for $23,000 — $10,000 to be paid in band, and the balance in annual payments of $2,000 each, with the exception of the last, which was $1,000.
In making this sale, Felix was instrumental, and it was made for his benefit, with an understanding between him and his brothers, that the proceeds should first be applied in payment of debts secured by the mortgage on the land, and the balance in payment of the other debts due the bank. An agreement w;as made between the bank and Felix, that he might liquidate his debt in bank stock at par, and on July 9,1823, he paid, in this way, $5,605.05, including stock in his own name, and a dividend on the same. There seems to have been an arrangement between the complainants and Felix, and pi’obably with a view to this agreement between Felix and the bank, that the proceeds of the sale to McNeil should be applied in the purchase of bank stock, which was then at a discount, and which the bank was to receive atrpar in payment of Felix’s debt; and by this operation it was supposed the whole debt would be liquidated, and a balance left of more than $2,000.
On January 22, 1824, the notes of McNeil for $13,000 were deposited in bank by complainants, and a receipt given them, reciting “the deposit of the notes, the indebtedness of Felix, the giving of the mortgage to the bank for a part of the debt, the sale of the land to the complainants after the mortgage, and that the bank had agreed to receive all its *debts in the stock of the bank at par value, in consideration of certain payments then lately made, and in consideration of complainants pledging and depositing McNeil’s notes as collateral security for the payment of the said Felix’s debt, and when said debt should be paid, the notes, or such of them as should be unpaid, should be returned to complainants; or if the complainants should wish to retaint he notes, they might do so by giviug such other security as the bank might accept.”
A considerable amount has been paid into bank in stock and money, more than sufficient to satisfy the debt of Felix secured by mortgage, but not sufficient to satisfy the other debts due the. bank. Within a short period, George and William Rennick have paid to the wife of Felix, he being still living, $14,000 to procure the relinquishment of her right of dower in the high bank farm.
*541 Such are the prominent facts in this ease.
The complainants contend that the moneys which have been ■paid into bank shall be first applied to the extinguishment of the debt secured by mortgage, and insist that if the contract of January 24, 1824, does not secure to them this right, it is differently worded from what was intended and should be reformed. The defendants deny that there is any mistake in the contract, and there is not a particle of testimony to prove any mistake. We must, therefore, take it as it is. By this agreement no difference is made between the different debts, but the intention is manifest that the whole amount of $23,000 should be applied in the way of payment. Not in the way of payment, first of one debt and then of another, but of the whole debt. The debts from that timé may be considered, so far as these parties are concerned, one consolidated debt. And it is manifest that the parties at the time supposed that the proceeds .of the sale to McNeil, in the way those proceeds were to be applied, would more than satisfy this whole debt.
But as it is found that the whole bank debt has not been, and probably will not be paid from the avails of the sale to McNeil, the complainants claim that they have a right to direct to which part of the debts, due from Eelix, the payments made into the bank shall be applied, and upon this principle they seek to h,ave them applied in extinguishment of the mortgage debt. Were there no contract in this case by which the application of the payments was to be controlled, there might probably be some difficulty. We suppose, however, there is no difficulty in ordinary *cases. Where there are different debts due, the debtor has a right, when he makes payment, to direct to which it shall be applied ; if he gives no direction, the creditor is authorized to apply it as he may think proper. But in this case there was a contract, and this must govern. By that contract no distinction was made between the different description of debts. They were all treated as one debt, and this debt was 'to be satisfied, as far as it could be done, with the $23,000.
The defendants contend that the complainants undertook to satisfy the whole debt; in other words, that they became securities for Eelix, that the whole debt to the bank should be paid, and therefore that they have a right to hold on to the mortgage until the whole debt is paid. They contend further that the conveyance *542 from Felix to George and William was fraudulent as to the bank, consequently that their judgments attached as alien upon the land, and that they are not, therefore, under any obligation to release the mortgage until the judgment liens are satisfied. It seems to the court that this claim of the defendants can not be sustained, and that they are mistaken in part, at least, with respect to the contract of January 22, 1824.
That the conveyance was, in contemplation of law, fraudulent, we think there can be no doubt. There’was a secret trust. The object was to relieve Felix in his embarrassed situation, and this was to be done by placing his property in a situation that it could not be reached by execution. The only payment toward the land which was to be made, was a sum sufficient to relieve it from the lien of an existing mortgage, and after this was done, the residue of the land was to be reconveyed. The conduct of the parties subsequently shows that it -was never intended that this property should rest in the complainants for their use. When sold to McNeil, it was done in part, at least, through the agency of Felix, and done, too; entirely for bis benefit. This conveyance being fraudulent, the judgments of the bank would operate as a lien upon the land in the hands of the complainants, or of any other person having notice of the fraud. But although this is true, the defendants could have received no more toward their debts, whether secured by mortgage or judgments, than the value of this land when sold at sheriffs sale. These were, in -part, the considerations which induced the complainants to enter into the arrangement of the 22d of January.
But it is now too late for the bank to set up this fraud. They, by their contract of the 22d of January, have agreed, upon the ^stipulations therein contained, to receive the proceeds of the sale to McNeil in satisfaction of their debt, in part or in whole, as the case might be, thereby, in effect, recognizing the conveyance to the complainants to be good and available. By this contract the complainants assert that these proceeds shall be thus applied. But do they undertake to say that the debt due from Felix shall at all events be paid ? They were under no obligation, either moral or legal, to do this, nor is there anything in the terms of the contract, from which it can be inferred that any such‘thing was intended. They were willing to obligate, and did obligate themselves, that the $23,000 received from McNeil, should go to sink *543 the debt of Felix; beyond this, they did not bind themselves. They undertook, however, that this $23,000 should be applied in the purchase of stock, if it could be done at a discount; in the first place, the $10,000, and the balance from time to time as it fell due, and this stock was to be transferred to the bank. And this is a part of the agreement, the performance of which the bank had a right to require.
It is claimed, on the part of the complainants, that they are entitled to a-credit for the $14,000 paid to Mrs. Rennick, to procure the relinquishment of her right of dower. But this can not be allowed. The husband is still living, and this right of dower isa mere expectancy. It may or may not be a charge upon the land. Besides, the bank were to have the benefit of the whole $23,000.
Whether they have had this benefit, we know not from any papers before us. The case must therefore be referred to a master to inquire:
1. How much of this $23,000 has been expended in the purchase of bank stock.
2. How much the complainants have paid into the bank in cash on the debt of Felix Rennick.
3. Whether the complainants have at any time neglected to purchase bank stock when it could have been procured at a discount, and when they had or might have had money in their hands, made Dy the sale to McNeil.
4. If they have thus neglected, what has been the loss on that account.
5. Whether moneys, the fruit of this sale to McNeil, have been detained by complainants an unreasonable length of time.
The master will examine witnesses, and the parties themselves under oath, if deemed necessary; and will also have access *to the books of the bank, for the purpose of aid, in stating an account, and will make report at the next term of this court in Ross county. With his report, he will return the testimony by him taken, on which it is based. And for the coming in of the report, and for final decree, this cause is continued and remanded.